UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEJANDRO MARCIAS BARAJAS,<br><br>                    Petitioner,<br><br>        - *against* -<br><br>SUPERINTENDENT OF FIVE POINTS<br>CORRECTIONAL FACILITY and LETITIA<br>JAMES, ATTORNEY GENERAL OF THE<br>STATE OF NEW YORK,<br><br>                    Respondents. | 21 Civ. 6766 (KMK) (AEK)<br><br>**REPORT AND<br>RECOMMENDATION** |

**TO: THE HONORABLE KENNETH M. KARAS, U.S.D.J.**

On August 1, 2021, Petitioner Alejandro Marcias Barajas ("Petitioner"), proceeding *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his November 16, 2010 judgment of conviction. ECF No. 2 ("Petition").[1]  On September 27, 2021, the Court issued an order directing Petitioner to file a declaration to explain why the Petition should not be denied as time-barred. ECF No. 6 ("9/27/21 Order").  In response, Petitioner filed an affirmation on or about November 20, 2021, seeking to demonstrate why the Petition should not be considered time-barred. ECF No. 7 ("Pet. Aff.").  In their memorandum of law in opposition to the Petition, filed on February 9, 2022, Respondents argue, among other things, that the Petition should be dismissed as untimely. *See* ECF No. 15 ("Resp. Mem.") at 1-5.

---

[1] Pursuant to the prison mailbox rule, *see Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001), a habeas petition is deemed filed as of the date it was given to prison officials for mailing.  The Petition does not include the date on which Petitioner gave it to prison officials for mailing, but Petitioner appears to have signed the Petition on August 1, 2021. *See* Petition at 122 (citing the page number assigned by the Court's Electronic Case Filing ("ECF") system).  Accordingly, the Court will use August 1, 2021 as the filing date for purposes of this Report and Recommendation.

For the reasons that follow, I respectfully recommend that the Petition be dismissed as time-barred.

## BACKGROUND

Because the Court finds that the question of whether the Petition was timely filed is dispositive, the Court recounts only the procedural history, including the relevant dates, related to Petitioner's criminal proceedings.

## I.    Plea and Sentencing

On September 9, 2010, Petitioner appeared in Westchester County Court with his attorney. A Spanish language interpreter was also present. At that time, Petitioner indicated that he understood the People's plea offer and was prepared to accept it and plead guilty to (i) one count of murder in the first degree, for which he would receive an indeterminate sentence of 22 years to life in prison; (ii) one count of robbery in the first degree, for which he would receive a determinate sentence of 20 years in prison followed by five years of post-release supervision; (iii) three counts of criminal possession of stolen property in the fourth degree, for which he would receive indeterminate sentences of one to three years in prison; and (iv) one count of criminal possession of stolen property in the fifth degree, a misdemeanor, for which he would receive a sentence of one year in custody, with all of the sentences to be served concurrently. See ECF No. 16 ("Plea Tr.") at 2-5, 7, 13-15.

After being sworn in, Petitioner stated that he understood everything that was being said to him through the interpreter; that Spanish was his primary language; and that he joined in his attorney's application for Petitioner to plead guilty to these crimes. Id. at 7. Petitioner also stated that he had enough time to discuss the matter with his attorney; that he understood all the rights he was waiving by pleading guilty; that he was entering his guilty plea freely and voluntarily; that he was pleading guilty because he was in fact guilty; and that other than the

sentence commitment stated on the record, no one had made any other promises with respect to his guilty plea. *Id.* at 8-11. Petitioner said that he understood that as a condition of his plea, he was waiving his right to appeal his conviction and sentence; that he discussed the waiver of his right to appeal with his attorney; and that in consideration of the plea, he was voluntarily waiving his right to appeal any conviction and sentence under the indictment. *Id.* at 12. Petitioner then allocuted to the crimes to which he was pleading guilty. *Id.* at 13-15.

On November 16, 2010, Petitioner again appeared in Westchester County Court with his attorney, this time for sentencing. *See* ECF No. 16-1 ("Sentencing Tr"). Again, a Spanish language interpreter was present.[2] After entering his guilty plea and prior to the sentencing proceeding, Petitioner had been interviewed by the Westchester County Department of Probation, and during that interview he stated that he had committed the crimes in self-defense. *See* ECF No. 14 ("Resp. Aff.") at 7. At the sentencing, the judge noted that Petitioner's claim of acting in self-defense was included in Petitioner's pre-sentence report, indicated that he had concerns about these statements, and explained to Petitioner that he had discussed these concerns with both the prosecutor and defense counsel and had given Petitioner's attorney additional time to speak to Petitioner about it. *See* Sentencing Tr. at 7. Thereafter, Petitioner was placed under oath and confirmed again that he (i) was pleading guilty because he was in fact guilty; (ii) entered that plea freely and voluntarily; and (iii) intentionally caused the victim's death and did not act in self-defense. *Id.* at 7-11.

Following the reallocution, the judge once again accepted Petitioner's plea, *id.* at 11-12, and imposed the agreed-upon sentences of an indeterminate term of 22 years to life in prison on

---

[2] The attendance of official Spanish interpreter Todd Burrell at both the plea and sentencing proceedings is noted on the first page of each transcript. *See* Plea Tr. at 1; Sentencing Tr. at 1.

the charge of murder in the first degree; a determinate term of 20 years in prison followed by five years of post-release supervision on the charge of robbery in the first degree; indeterminate terms of one to three years in prison on the three charges of criminal possession of stolen property in the fourth degree; and a term of one year in custody on the misdemeanor charge of criminal possession of stolen property in the fifth degree, *id.* at 17-18. The sentences on all of these charges were ordered to be served concurrently with one another. *Id.* at 18.

At the conclusion of the sentencing proceeding, the court clerk advised Petitioner on the record about his right to appeal as follows:

> You have the right to appeal this judgment and sentence. To appeal, you must, within 30 days from the sentencing date, file a written Notice of Appeal, in duplicate, with the clerk of the sentencing court and serve a copy of it on the District Attorney's Office. Your present attorney will continue to represent you for the sole purpose of filing your Notice of Appeal. If you cannot afford an attorney to represent you in connection with your appeal, upon your application to the Appellate Division, you will be assigned one free of charge if you are financially eligible.

*Id.* at 19. Petitioner's attorney then stated that "[a]t this time, your Honor, I'm handing our client a copy of our standard letter from the Legal Aid Society advising him of his rights to appeal." *Id.* at 20.

## II.  Post-Sentencing Procedural History

According to Respondents, after Petitioner was sentenced, "[n]o appeal was noticed, nor was any other action taken in pursuit of securing an appeal in the ensuing eight years." Resp. Aff. at 8. On May 3, 2018, Petitioner filed a motion to vacate his judgment of conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10. *See* ECF No. 15-5 ("440.10

Motion").[3]  Having not received a decision on the 440.10 Motion, Petitioner, by letter dated

October 11, 2018, asked the County Court to grant him "summary judgment" on the motion.  *See*

ECF No. 15-8.  Thereafter, on January 29, 2019, Petitioner filed a motion pursuant to New York

Civil Practice Law and Rules § 3215(a) in the Appellate Division, Second Department, seeking a

"default judgment" granting the 440.10 Motion based on the County Court's failure to issue a

decision.  *See* ECF No. 15-9 at 4-16.  In connection with that motion, Petitioner also moved for

permission to appeal as a poor person, in which he stated that "movant, attorney filed notice of

appeal on November 16th 2010, with the County Clerk's office and notice also was served on the

District Attorney of Westchester on November 16th 2010."  *Id.* at 2 (cleaned up).  No such notice

of appeal was attached to these motion papers, however, nor has any purported notice of appeal

from 2010 (or any other time) ever been produced in this habeas proceeding.[4]  On March 18,

2019, the Appellate Division, apparently construing Petitioner's combined January 2019 filings

---

[3] The Court will apply the prison mailbox rule the 440.10 Motion as well.  *See Ruiz v. Poole*, 566 F. Supp. 2d 336, 340 n.1 (S.D.N.Y. 2008).  Therefore, the 440.10 Motion is deemed filed on May 3, 2018, the date on which Petitioner placed the motion in the prison mail.  *See* ECF No. 15-5 at 1.

[4] To the contrary, Petitioner acknowledges that he never filed a direct appeal, and certainly not on the same day as his sentencing.  Rather, in his affirmation regarding timeliness, he states that

> after saving my pennies, for a very long time, [Petitioner], with
> reservations handed funds over to a self-proclaimed jail-house la[w]yer,
> whom advised of their purported submitting an appeal in [Petitioner's],
> behalf, only to discover, after that person went on a draft, that had not
> taken place, then to be told that the only recourse, was an Article § 440, of
> the [CPL], a postconviction Motion.

Pet. Aff. at 4; *see also* Petition at 12 (Petitioner notes that on appeal, he had "[n]o [a]ssigned attorney (no notice of appeal was filed)").

as "a motion for leave to appeal," rejected the motion because Petitioner "failed to annex a copy of the order, judgment or determination sought to be reviewed . . . ." ECF No. 15-10.

Petitioner subsequently re-filed the same 440.10 Motion in County Court on July 24, 2019. ECF No. 15-11. On December 30, 2019, the County Court denied the 440.10 Motion. ECF No. 15-12. By papers dated February 3, 2020, Petitioner filed what was construed by both the prosecution and the court as an application for leave to appeal the denial of the 440.10 Motion in the Appellate Division, Second Department. ECF No. 15-13. The Appellate Division denied the application for leave to appeal on May 15, 2020. ECF No. 15-15. By papers dated July 22, 2020, Petitioner moved to reargue the Appellate Division's decision and order. ECF No. 15-16. The Appellate Division denied Petitioner's motion for leave to reargue on October 2, 2020. ECF No. 15-18.

Petitioner filed the Petition at issue here on August 1, 2021. ECF No. 2.

## DISCUSSION

### I.   Standard of Review

"Habeas review is an extraordinary remedy." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (citing *Reed v. Farley*, 512 U.S. 339, 354 (1994)). To be granted a writ of habeas corpus from a federal district court, a petitioner must fully and carefully comply with the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. Before a federal district court may review the merits of a state criminal judgment in a habeas corpus action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C §§ 2244 and 2254. If a petitioner has met these threshold requirements, a federal district court may hear "an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" only if the

petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The AEDPA imposes a one-year limitations period for the filing of a federal habeas petition. 28 U.S.C. § 2244(d)(1). This limitations period begins to run from the latest of four possible dates: (1) the date on which the judgment of conviction becomes final by the conclusion of direct review or the expiration of the time for seeking such review; (2) the date on which a government-created impediment to filing a habeas petition is removed; (3) the date on which the constitutional right asserted is initially recognized by the Supreme Court, if the right has been made retroactively applicable to cases on collateral review; or (4) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. *See* 28 U.S.C. § 2244(d)(1)(A)-(D).

Section 2244(d)(2) tolls the one-year limitations period for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ." 28 U.S.C. § 2244(d)(2). A state post-conviction or collateral review application that is filed after the statutory limitations period has expired, however, does not reset the one-year clock. *See Moise v. Fields*, No. 19-cv-11964 (VSB) (RWL), 2021 WL 5316133, at *5 (S.D.N.Y. Sept. 20, 2021), *adopted by* 2021 WL 6133992 (S.D.N.Y. Dec. 29, 2021).[5] Thus, the tolling provision of Section 2244(d)(2) is applicable only if a petitioner's post-conviction motion was pending within the one-year limitations period for the filing of a federal habeas petition.

---

[5] In accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009), and Local Civil Rule 7.2 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, copies of this case and other cases that are unpublished or only available by electronic database are being simultaneously mailed to the *pro se* Petitioner along with this Report and Recommendation.

In "rare and exceptional circumstance[s]" a court can equitably toll the AEDPA limitations period, allowing a petition filed outside of the one-year limitations period to be considered timely. *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (*per curiam*) (cleaned up). To be eligible for equitable tolling, a petitioner must show that (1) extraordinary circumstances prevented him or her from filing the petition on time, and (2) the petitioner acted with reasonable diligence throughout the period he or she seeks to toll. *Id.*; *see Holland v. Florida*, 560 U.S. 631, 649 (2010).

The United States Supreme Court also has held that a claim of actual innocence may provide an "equitable exception" to the AEDPA limitations period. *McQuiggin v. Perkins*, 569 U.S. 383, 386, 392-93 (2013). This exception creates a "gateway" to habeas review despite expiration of the statute of limitations and requires a petitioner to make the same showing of actual innocence necessary to overcome a procedural bar to habeas review that was articulated in *Schlup v. Delo*, 513 U.S. 298 (1995), and *House v. Bell*, 547 U.S. 518 (2006). *See McQuiggin*, 569 U.S. at 386. Thus, "a claim of actual innocence must be both 'credible' and 'compelling.'" *Rivas v. Fischer*, 687 F.3d 514, 541 (2d Cir. 2012). To be "credible," an actual innocence claim "must be supported by 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Id.* (quoting *Schlup,* 513 U.S. at 324 and citing *House,* 547 U.S. at 537). For such a claim to be "compelling," "the petitioner must demonstrate that 'more likely than not, in light of the new evidence, no reasonable juror would find him [or her] guilty beyond a reasonable doubt—or to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.'" *Id.* (quoting *House*, 547 U.S. at 538).

**II.    Timeliness and Tolling**

The record in this matter demonstrates that the Petition was not timely filed, and Petitioner is not entitled to statutory tolling.  In addition, Petitioner has failed to demonstrate either his entitlement to equitable tolling of the statute of limitations, or a claim of actual innocence that could serve as an equitable exception to the statute of limitations.  Accordingly, the Petition should be dismissed as time-barred.

**A.    The Petition Was Not Timely Filed and Petitioner Is Not Entitled to Statutory Tolling**

**1.    The Petition is Untimely**

As noted above, a one-year statute of limitations applies to the filing of federal habeas petitions; here, that period began to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  Petitioner was sentenced on November 16, 2010, which meant that the deadline for Petitioner to file a direct appeal from his judgment of conviction was December 16, 2010.  *See* CPL § 460.10(1)(a) ("A party seeking to appeal from a judgment or a sentence . . . must, within thirty days after imposition of the sentence[,] . . . file . . .  a written notice of appeal . . . .");  Sentencing Tr. at 19.  Because Petitioner never filed a direct appeal, *see* footnote 4, *supra*; Resp. Aff. at 8, Petitioner's judgment of conviction became final on December 16, 2010, when the time for filing a notice of appeal from the judgment expired, *see* 9/27/21 Order at

9

2[6]; *Bethea v. Girdich*, 293 F.3d 577, 578 (2d Cir. 2002) (*per curiam*) ("the one-year limitations period began running . . . when [the petitioner's] time for filing a notice of appeal from his judgment of conviction expired . . ."). Accordingly, the deadline under the AEDPA for filing a federal habeas petition was December 16, 2011, one year after the expiration of Petitioner's deadline to file a notice of appeal from his judgment of conviction. Petitioner filed the Petition on August 1, 2021, more than nine years and seven months after the expiration of the one-year limitations period. Thus, unless the statute of limitations was tolled or the equitable exception to the statute of limitations applies, the Petition is time-barred.

### 2.    The Limitations Period Was Not Statutorily Tolled

Under the AEDPA, "[t]he time during which a properly filed application for state post-conviction or collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). Petitioner originally filed his 440.10 Motion on May 3, 2018. As noted above, Petitioner's

---

[6] Petitioner acknowledges in his November 2021 filing that the 9/27/21 Order referenced the date on which his judgment of conviction became final as the relevant date for statute of limitations purposes. Pet. Aff. at 4; *see* 28 U.S.C. § 2244(d)(1)(A). He also states that the other three subsections of this statute pertaining to the calculation of the AEDPA statute of limitations, 28 U.S.C. § 2244(d)(1)(B)-(D), are "yet[] to be understood" by him. Pet. Aff. at 4. That said, Petitioner does not contend—nor is there anything in the record to support the conclusion—that the AEDPA statute of limitations in this case began to run on any date other than the date on which the judgment of conviction became final.

Nonetheless, to the extent that Petitioner's papers could be read as claiming that the AEDPA statute of limitations began to run on "the date on which a government-created impediment to filing a habeas petition [was] removed," 28 U.S.C. § 2244(d)(1)(B), the only potential impediment Petitioner cites is the County Court's delay in deciding the original 440.10 Motion, Pet. Aff. at 4-5. But any delay in issuing a decision on the 440.10 Motion was not an impediment to Petitioner filing a timely federal habeas petition, because the 440.10 Motion was filed years after the AEDPA statute of limitations had expired already. The County Court's actions in 2018 and 2019 did not prevent Petitioner from seeking to exhaust his federal habeas claims in the state courts in 2010 or 2011, prior to the expiration of the one-year statute of limitations as measured from the date on which his judgment of conviction became final.

judgment of conviction became final on December 16, 2010, and the AEDPA one-year limitations period expired on December 16, 2011. "In order to toll the statute of limitations, a state court collateral motion must be pending *during* the limitations period; a state court collateral action filed after the period has expired has no tolling effect." *Moise*, 2021 WL 5316133, at *5 (emphasis in original). Because the 440.10 Motion was filed almost six and a half years after Petitioner's statutory deadline to file his federal habeas petition, the filing of the 440.10 Motion did not serve to toll the limitations period. As a result, Petitioner is not entitled to the benefit of any form of statutory tolling.

**B.        Petitioner Is Not Entitled to Equitable Tolling of the Statute of Limitations**

For equitable tolling to apply, Petitioner must show that (1) extraordinary circumstances prevented him from filing the Petition on time, and that (2) he acted with reasonable diligence throughout the period he seeks to toll. *Smith*, 208 F.3d at 17. "The word 'prevent' requires the petitioner to demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his [or her] filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000).

The United States Court of Appeals for the Second Circuit has explained that "[a]s a general matter, [courts] set a high bar to deem circumstances sufficiently 'extraordinary' to warrant equitable tolling. Whether a circumstance is extraordinary is based not on how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather, how severe an obstacle it is for the prisoner endeavoring to comply with [the] AEDPA's limitations period." *Dillon v. Conway*, 642 F.3d 358, 363 (2d Cir. 2011) (cleaned up). "It is exceedingly

11

rare for courts in the Second Circuit to find that extraordinary circumstances exist." *Hernandez v. Khahaifa*, No. 10-cv-6582 (KMK), 2013 WL 3984958, at *13 (S.D.N.Y. July 31, 2013) (cleaned up).

Petitioner cites a number of reasons for the untimeliness of the Petition. He first points out his "limited English speaking and even less comprehension of the legal system and its legal ramification . . . ," and states that "it has been several years of first working hard to learn English, and than [*sic*] to try and understand the legal issues . . . ." Pet. Aff. at 1. But "[a]n inability to speak or understand English has consistently been rejected by courts in this Circuit as a basis to equitably toll the statute of limitations." *Coronel v. United States*, No. 12-cv-8673 (SAS), 2013 WL 765321, at *1 (S.D.N.Y. Feb. 28, 2013) (quotation marks omitted) (citing cases). "This well-established rule has its roots in *Diaz v. Kelly,* [515 F.3d 149 (2d Cir. 2008)], where the Second Circuit first considered whether language deficiency could qualify as an extraordinary circumstance warranting equitable tolling." *Id.*

The *Diaz* court explained that "the diligence requirement of equitable tolling imposes on the prisoner a substantial obligation to make all reasonable efforts to obtain assistance to mitigate his [or her] language deficiency." 515 F.3d at 154. There, the petitioners "claimed nothing more than the unavailability of personnel within their prisons who could translate for them during the applicable limitations periods." *Id.* Because there was "no allegation of any efforts to contact anyone outside the prison who might assist in making [the petitioners] aware, in their language, of legal requirements for filing a habeas corpus petition, nor what efforts were made to learn of such requirements within their places of confinement," the Second Circuit held that the district court properly rejected the petitioners' claims of entitlement to equitable tolling. *Id.* In this case,

12

Petitioner has failed to demonstrate that he made any efforts to obtain assistance with understanding, in his native Spanish, the legal requirements for filing a habeas petition.

Petitioner does contend that the Spanish interpreter used during his criminal proceedings—who he describes as "the translater [*sic*], for the prosecutor"—"provided ill-advised, legal interpretation, of what actually was taking place in open Court," and that the court and the prosecutor knew this.  Pet. Aff. at 3.  He maintains that the County Court and the prosecutor therefore knew that his plea would not be voluntary, knowing, and intelligent, and that they still "proceeded with the miscarriage of justice" against him; he further alleges that a purported translated statement was improperly admitted into evidence and "violated . . . [his] right to fair dealing and right to a fair trial." *Id.* at 3-4.  As for how any of this relates to the possible availability of equitable tolling, it is unclear if Petitioner is making any assertion with respect to the interpreter's translation of what transpired during the sentencing proceeding, at the conclusion of which Petitioner was, according to the transcript, clearly advised of his right to take an appeal and the time within which to do so. *See* Sentencing Tr. at 19.  In any event, even "an unsworn interpreter is cloaked with the presumption of regularity, which allows a court to assume that an official or person acting under an oath of office will not do anything contrary to his or her official duty." *German-yunga v. Racette*, No. 14-cv-4537 (ERK), 2016 WL 335865, at *6 (E.D.N.Y. Jan. 27, 2016) (cleaned up).  Petitioner has not come forward with any evidence, other than his own self-serving assertions, to rebut the presumption of regularity applicable to the interpreter's execution of his duties during the proceedings.  He has therefore failed to demonstrate that he was not apprised, in Spanish, of the steps he had to take in order to pursue a direct appeal.  Moreover, any confusion that Petitioner may have had with respect to the timing

13

of his direct appeal does not excuse the fact that Plaintiff did not file the Petition until years after the expiration of the AEDPA statute of limitations.

Petitioner also cites his lack of knowledge of the legal system and the law, including his right to appeal and the statute of limitations for filing his habeas petition. *See* Pet. Aff. at 1, 4 (Petitioner "never had a clue, about any appeal proceedings, be it one year or one day"). "The law is clear, however, that equitable tolling cannot 'be premised on a litigant's lack of education, *pro se* status, or ignorance of the right to bring a claim.'" *Joaquin v. Smith*, No. 21-cv-9372 (PAE) (SLC), 2022 WL 18956531, at *6 (S.D.N.Y. Dec. 30, 2022) (quoting *Watson v. United States*, 865 F.3d 123, 133 (2d Cir. 2017)) (cleaned up), *adopted by* 2023 WL 2237798 (S.D.N.Y. Feb. 27, 2023); *see also Horton v. McCoy*, No. 11-cv-0034 (WMS), 2012 WL 34071, at *5 (W.D.N.Y. Jan. 5, 2012) ("courts have consistently found that circumstances such as indigency, and ignorance of the law and legal procedures are not sufficiently 'extraordinary' to merit equitable tolling"); *Lewis v. Walsh*, No. 03-cv-1932 (DC), 2003 WL 21729840, at *2 (S.D.N.Y. July 25, 2003) ("[A] lack of knowledge of the law is not in any way rare, extraordinary, or unusual—indeed, it is probably the rule rather than exception among prisoners."). Similarly, Petitioner cites as an additional excuse the fact that after saving money "for a very long time," he paid a "self-proclaimed jail-house la[w]yer, whom advised of their purported submitting an appeal in [Petitioner's] behalf," but later learned that that person did not file an appeal, at which point Petitioner was told that all he could do was file a § 440.10 motion. Pet. Aff. at 4.[7] But "[c]ourts in New York consistently have held that reliance on a jailhouse lawyer, or even on the

---

[7] Petitioner does not state when any of this purportedly occurred. The record reflects only the date on which the 440.10 Motion originally was filed—May 3, 2018.

erroneous advice of a licensed attorney, does not qualify as an extraordinary circumstance warranting equitable tolling." *Walker v. Graham*, 955 F. Supp. 2d 92, 103 (E.D.N.Y. 2013).

And even if the jailhouse lawyer failed to file a direct appeal for Petitioner, Petitioner has not shown how this prevented him from timely filing the Petition. *See Brown v. Khahifa*, No. 09-cv-869 (MAT), 2011 WL 2470464, at *4 (W.D.N.Y. June 20, 2011) ("Most importantly, however, petitioner has not explained how his counsel's failure to file a Notice of Appeal affected his actual ability to timely file his habeas petition."); *Raynor v. Dufrain*, 28 F. Supp. 2d 896, 900 (S.D.N.Y. 1998) ("even if petitioner's attorney failed to file a notice of appeal in the instant case, this failure had no bearing on his actual ability to pursue habeas relief"); *see also Bowman v. Walsh,* No. 07-cv-3586 (BMC), 2007 WL 2815711, at *2 (E.D.N.Y. Sept. 25, 2007) ("Not every petitioner appeals his conviction, especially where, as here, the petitioner pled guilty.  Nor is an appeal a necessary prerequisite to filing a timely habeas petition.").

Lastly, Petitioner seeks to excuse his delay in filing the Petition based on the alleged delay in the state court deciding the 440.10 Motion, *see* Pet. Aff. at 4-5, but as previously explained, *see* footnote 6, *supra*, by the time Petitioner filed the 440.10 Motion in 2018, he was already years past the deadline to timely file a federal habeas petition in accordance with the AEDPA.  Accordingly, any delay in deciding the 440.10 Motion in 2018 and 2019 cannot serve as a basis for equitable tolling of a deadline that had expired long before then.

In sum, none of the issues cited by Petitioner constitutes the kind of "rare and exceptional circumstance" that warrants equitable tolling of the AEDPA one-year limitations period. Moreover, Petitioner has made no showing that he acted with reasonable diligence throughout the almost ten-year period of time that he seeks to toll.  Indeed, Petitioner's efforts in filing the 440.10 Motion came after almost six and a half years during which he took no action to pursue

15

his habeas claims. *See Smith*, 208 F.3d at 17 ("[T]he party seeking equitable tolling must have acted with reasonable diligence *throughout* the period he [or she] seeks to toll.") (emphasis added). Petitioner is therefore not entitled to the benefit of equitable tolling.

### C.    Petitioner Has Not Presented a Gateway Claim of Actual Innocence

While a claim of actual innocence may provide an "equitable exception" to the AEDPA limitations period, at no point in any of his submissions does Petitioner suggest that he has pursued or intends to pursue a claim of actual innocence. Accordingly, the equitable exception of actual innocence does not apply here.

*    *    *    *    *    *

In sum, the Petition was filed long after the expiration of the AEDPA one-year statute of limitations for filing a federal habeas petition; Petitioner is not entitled to statutory tolling because his post-conviction applications were filed well after the AEDPA statute of limitations had expired; and Petitioner has not demonstrated that he is entitled to equitable tolling of, or an equitable exception to, the limitations period. Accordingly, the Petition is untimely.[8]

### CONCLUSION

For the foregoing reasons, I respectfully recommend that the Petition be dismissed as time-barred. As the Petition presents no questions of substance for appellate review, I respectfully recommend that a certificate of probable cause should not issue. *See Rodriquez v. Scully*, 905 F.2d 24 (2d Cir. 1990) (*per curiam*); *Alexander v. Harris*, 595 F.2d 87, 90-91 (2d Cir. 1979). I further respectfully recommend that Your Honor certify pursuant to 28 U.S.C. §

---

[8] Because this Court concludes that the Petition is untimely, it declines to address the merits of any of Petitioner's claims for habeas relief.

16

1915(a) that an appeal from this order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438 (1962).

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have 14 days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made by mail). A party may respond to another party's objections within 14 days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any responses to such objections, must be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Kenneth M. Karas, United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the Honorable Andrew E. Krause at the same address.

Any request for an extension of time for filing objections or responses to objections must be directed to Judge Karas, and not to the undersigned.

17

**Failure to file timely objections to this Report and Recommendation will result in a waiver of objections and will preclude appellate review.** *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Campbell*, 782 F.3d 93, 102 (2d Cir. 2015).

Dated: February 25, 2026
      White Plains, New York

                                         Respectfully submitted**,**

                                  _____
                                  ANDREW E. KRAUSE
                                  United States Magistrate Judge

      A copy of this Report and Recommendation has been mailed by Chambers to the *pro se* Petitioner at his address of record on the docket as of the date of the Report and Recommendation, which was confirmed on the New York State Department of Corrections and Community Supervision website. *See Incarcerated Lookup*, Department of Corrections and Community Supervision (last visited 2/25/2026) [https://perma.cc/BD82-UUGL].